575 S.E.2d 414

Robert L. HIVELY, M.D., Plaintiff Below, Appellant,

v.

John V. MERRIFIELD, M.D.; John P. Lilly, M.D.; Paul T. Kuryla, M.D.; Jonathan P. Lilly, M.D.; and Anthem Health Plan of West Virginia, Inc., d/b/a PrimeOne, A West Virginia Corporation, Defendants Below, Appellees.

No. 30437.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 13, 2002.

Decided Dec. 9, 2002.

Robert A. Taylor, Esq., Masters & Taylor, Charleston, WV, for Robert L. Hively, M.D.

Benjamin L. Bailey, Esq., Bailey & Glasser, Charleston, WV, for PrimeOne.

PER CURIAM.

The appellant, Robert L. Hively, M.D., appeals the July 24, 2001, order of the Circuit Court of Kanawha County dismissing his complaint for interference with a business relationship, defamation, and fraud against Anthem Health Plan of West Virginia, Inc., which does business as PrimeOne, a West Virginia Corporation ("PrimeOne"). Because we find the dismissal order fails to set out sufficient findings of fact under this Court's holding in *Fayette County Nat. Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997), we reverse and remand for the circuit court to enter a final order which conforms to the standards set forth in *Lilly*.

I.

FACTS

Dr. Robert L. Hively, the appellant, was a partner in a medical practice known as Dunbar Medical Associates with Drs. John V. Merrifield, John P. Lilly, Paul T. Kuryla, and Jonathan P. Lilly, who are defendants below.[1] PrimeOne, the appellee, is a managed health care organization. Dunbar Medical Associates participated in PrimeOne's network of physicians.[2]

On December 5, 1995, one of Dr. Hively's patients showed him an October 17, 1995, letter she received in the mail. The letter was on Dunbar Medical Associates' letterhead; it contained information about the PrimeOne Health Plan, and it stated "[w]e hope you'll consider the advantages of PrimeONE carefully[.]" The names of the five partners in Dunbar Medical Associates were typed at the bottom of the letter with each partner's signature located above his typed name. In his brief to this Court, Dr. Hively contends that he did not grant permission to use his name on the letter nor did he sign the letter. PrimeOne asserts in its brief to this Court, "the signature over Dr. Hively's typed name is difficult to read. It is not, however, his name. Rather, it is the signature of another doctor with Dunbar Medical Associates, Jonathan P. Lilly." (Citations omitted).

In May 1996, Dr. Hively departed Dunbar Medical Associates and started his own medical practice.[3] Thereafter, another letter was sent out on Dunbar Medical Associates' letterhead and addressed "To Whom It May Concern." Some of the patients in Dr. Hively's new practice received this letter. The letter informed its recipients that their physician elected not to participate with PrimeOne, and that Dunbar Medical Associates would welcome the opportunity to serve their medical needs. According to Dr. Hively, his patients incorrectly received the letter because he was, at that time, participating in PrimeOne. Dr. Hively complained to PrimeOne about the letter.

Thereafter, a letter on PrimeOne letterhead dated August 2, 1996, was mailed which informed its recipients that the previous letter "may have been sent to you by mistake." The August 2, 1996, letter explained that the previous letter "should have been sent only to those few PrimeONE members who had not designated a Primary Care Physician, or to those few members whose Primary Care Physicians elected not to participate in the

---

1. Dr. Hively and Drs. Merrifield, John Lilly, Kuryla, and Jonathan Lilly were also partners in a separate partnership known as Dunbar Medical Laboratory.

2. According to Dr. Hively, one of his former partners, Dr. John P. Lilly, formed a company known as Primary One in February 1994, along with Drs. A. Paul Brooks, Jr. and William B. Ferrell, Jr. Dr. Hively further states that Primary One developed and invested in the appellee, Anthem Health Plans of West Virginia, Inc., d/b/a PrimeOne ("PrimeOne"), a Health Management Organization licensed to do business in West

Virginia, and that PrimaryOne owns 38% of the stock in PrimeOne.

3. According to Dr. Hively's complaint, "[b]y their actions in refusing to recognize their duties to [Dr. Hively], the individual defendants [his former partners] caused a termination and/or dissolution of the [Dunbar Medical Associates] partnership." In his brief to this Court, Dr. Hively contends that in November 1995, his partners decided to remove him as a partner and they set his departure date as May 24, 1996.

network." It further stated, "It was never our intention to disrupt any doctor-patient relationship."

Dr. Hively withdrew from the PrimeOne network in September 1996. According to Dr. Hively, his withdrawal occurred after a patient, who was apparently dissatisfied with PrimeOne's services, inquired of him why he had recommended that she switch to PrimeOne in the October 17, 1995, letter. Dr. Hively asserts that at this point he realized that the October 17, 1995, letter may have given some of his patients the mistaken notion that he had a financial interest in PrimeOne and that this interest caused him to endorse PrimeOne. Dr. Hively explains that in order to remove any appearance of impropriety, he withdrew from the PrimeOne network even though PrimeOne insured approximately 250 of his patients.

On December 23, 1997, Dr. Hively filed an amended complaint against his four former partners in Dunbar Medical Associates and PrimeOne. Dr. Hively does not appeal the counts filed against his former partners. At issue in this appeal are only those counts filed against PrimeOne. Count III of the complaint alleges "Interference with Business Relationship" and states:

Upon the wrongful dissolution and termination of the partnership, as aforesaid, the defendants set about to and did intentionally interfere with you [sic] plaintiff's doctor-patient relationship by providing incorrect and false information to your plaintiff's patients.

As a proximate result of the defendants [sic] acts and conduct your plaintiff lost business and profits and was otherwise damaged in that his reputation was damaged, he suffered emotional distress and was greatly annoyed and inconvenienced.

Count V alleges "Defamation" and states in part:

The defendants published a letter to you [sic] plaintiff's patients indicating that plaintiffs [sic] competition was a good alternative when defendants knew it would

damage you [sic] plaintiff and plaintiff did not sign the letter.

Finally, Count VI alleges "Fraud" and states:

The acts and conduct of defendants as alleged above were fraudulent and plaintiff was damaged as aforesaid.

The acts and conduct of defendants were willful and wanton and in reckless disregard of plaintiff's rights and plaintiff is entitled to punitive damage[.]

On September 21, 1998, PrimeOne filed a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. In support of this motion, PrimeOne asserted:

First, [the complaint] names the wrong party in paragraphs 6 and 19. The complaint mentions PrimeOne instead of "PrimaryOne", which Dr. Hively now admits. Second, as the deposition of Dr. Hively reveals, his dispute with PrimeOne relates solely to two letters which Dr. Hively claims PrimeOne was involved, somehow, in sending. Even assuming PrimeOne was involved in sending them, those letters on their face do not provide a basis for Dr. Hively's claims against PrimeOne: interference with business relationships ... defamation ... or fraud[.]

Finally, Dr. Hively's deposition reveals that he suffered no harm as a result of the acts he alleges against PrimeOne. In September of 1996, he voluntarily decided to withdraw from the PrimeOne network, which meant he could no longer be paid by PrimeOne for treating patients insured by PrimeOne. No actions of any of these defendants caused him to make that decision. In fact, as he testified, PrimeOne urged him to stay within its network. Thus, by his own actions, Dr. Hively abandoned any claim against PrimeOne, or any of the other defendants, arising out of his alleged loss of any PrimeOne patients.

On March 23, 1999, the circuit court held a hearing on PrimeOne's motion to dismiss at which arguments were heard. PrimeOne argued, in addition to the grounds set forth in its motion to dismiss, that the one year statute of limitations on the defamation claim had run. At the conclusion of the hearing, the circuit court stated, in part:

Taken in the totality of everything that was said today, it seems to me that the reasons that have been put forth by PrimeONE are the reasons that the motion to dismiss should be granted.

... [T]aken in the context of what would be most favorable to the plaintiff in the case against PrimeONE, it doesn't seem like it amounts to a hill of beans, it just doesn't seem like anything is there. It would be so expensive and so long and so protracted to go through any connections, as ancillary as they are, of the corporation to these doctors as it relates to the genesis of the complaint that it seems like a 12(b)(6) motion is warranted. Whether that's characterized in findings, Mr. Bailey [PrimeONE's counsel], that I would like to ask that you present, in the form of a motion to dismiss or summary judgment, I think you can propose those and submit those to me for my consideration. I do think though that it appears to be a failure to state a cause of action upon which relief can be granted, and of course, the statute of limitations on [the defamation] case.

By order of July 24, 2001, the circuit court dismissed Dr. Hively's claims against PrimeOne. The dismissal order stated in its entirety:

On March 23, 1999, came the parties, by counsel, for a hearing on the motion to dismiss of Defendant Anthem Health Plan of West Virginia, Inc. d/b/a PrimeOne ("PrimeOne"). PrimeOne moved the Court to dismiss Plaintiff's claims against it.

WHEREFORE, after reviewing all of the briefs in this matter, examination of all documents, exhibits and after extensive argument from all parties, the Court does hereby GRANT said motion and ORDERS that Plaintiff's claims against PrimeOne are hereby dismissed. The Plaintiff's exceptions and objections are noted[.]

The Court further ORDERS that Plaintiff's case against all other Defendants shall continue in this action.

The Clerk is directed to send a certified copy of entered Order to all counsel of record.

## II.

## DISCUSSION

■ The parties raise several arguments in support of their respective positions in their briefs to this Court. However, we need not consider these arguments since we find it necessary to reverse and remand for the circuit court to make findings of fact and conclusions of law.

■ It is not clear from the text of the circuit court's order whether it is a dismissal pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure or a summary judgment order pursuant to R.Civ.P. 56. We choose to treat it as a summary judgment order.[4] Even though PrimeOne moved for dismissal under Rule 12(b)(6), it stated in its motion that "[b]ecause this motion involves some materials beyond the face of the complaint, principally the deposition of Dr. Hively and documents discussed therein, the Court may wish to treat it as a motion for summary judgment[.]" Also, PrimeOne avers in its brief that the circuit court granted its motion to dismiss after converting it to a motion for summary judgment. Finally, this Court has indicated that "if a circuit court considers matters outside the pleadings in connection with a motion to dismiss, we must treat the motion as one for summary judgment." *Harrison v. Davis*, 197 W.Va. 651, 657 n. 16, 478 S.E.2d 104, 110 n. 16 (1996). It appears to this Court from the attachments to the motion to dismiss and the arguments made at the March 23, 1999, hearing on the motion that the circuit court considered matters outside the pleadings.

---

4. Even if this Court were to treat the order as a dismissal pursuant to Rule 12(b), our disposition of this case would be the same. In Syllabus Point 1 of *P.T.P., IV By P.T.P. v. Board of Educ.*, 200 W.Va. 61, 488 S.E.2d 61 (1997), which concerned a Rule 12(b) dismissal, this Court held that "[a] circuit court's order granting dismissal should set out factual findings sufficient to permit meaningful appellate review. Findings of fact include facts which the circuit court finds relevant, determinative of the issues, and undisputed."

In Syllabus Point 3 of *Fayette County Nat. Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997), we held:

> Although our standard of review for summary judgment remains de novo, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed.

The circuit court's dismissal order clearly does not set out factual findings sufficient to permit meaningful review by this Court. The necessity of factual findings is based on this Court's function "to determine whether the stated reasons for the granting of summary judgment by the lower court are supported by the record." *Lilly,* 199 W.Va. at 353, 484 S.E.2d at 236 (footnote omitted). We have also explained, in the context of Rule 12(b) orders of dismissal:

> Appellate courts, on review, rely heavily on the trial judge's order; the order is extremely important. The order often assists appellate courts in understanding what the trial court did and why, and good orders often rebut allegations made by appealing parties in briefs and arguments. If the lower tribunal is interested in having its decision affirmed, then the lower court should assist the appellate courts by providing comprehensive, well-reasoned orders. Submission of a comprehensive or-

der assists an appellate court in finding a way to affirm the lower court's order.

*P.T.P., IV By P.T.P. v. Board of Educ.,* 200 W.Va. 61, 65, 488 S.E.2d 61, 65 (1997) (footnote omitted). This Court is unable to perform its function unless the circuit court's order contains an adequate factual basis for its ultimate conclusion. Said another way, before this Court can review the circuit court's reasons for dismissing Dr. Hively's claims against PrimeOne, we must know what those reasons are. The circuit court's conclusory order simply does not supply us with those reasons.[5]

## III.

## CONCLUSION

We conclude that the circuit court committed reversible error by granting summary judgment without including findings of fact and conclusions of law sufficient for meaningful review by this Court. Accordingly, we reverse and remand for the circuit court to include in its final order the factual and legal basis for its decision.[6]

Reversed and remanded.

---

5. In its brief, PrimeOne explains that,

> Following the hearing, PrimeOne's counsel presented Dr. Hively with a detailed joint order setting forth the specific findings of fact and conclusions of law that the circuit court reached. Dr. Hively refused to sign it, and instead agreed to the bare statement that the court had dismissed all of his claims against PrimeOne which was ultimately entered.

This is not an acceptable excuse for the insufficiency of the dismissal order.

6. Since our holding in *Lilly,* this Court has been compelled on several occasions to reverse and remand a circuit court order due to insufficient findings of fact. *See State ex rel. W.Va. DHHR v. Kaufman,* 203 W.Va. 56, 58, 506 S.E.2d 93, 95 (1998) ("We conclude that the lower courts inadequately articulated the bases for the denials of summary judgment on the multiple grounds alleged by DHHR."); *Nestor v. Bruce Hardwood Flooring, L.P.,* 206 W.Va. 453, 457, 525 S.E.2d

334, 338 (1999) ("We conclude ... that the circuit court committed reversible error by granting summary judgment without including sufficient findings of fact and conclusions of law in its final order."); *Stout v. Ravenswood Aluminum Corp.,* 207 W.Va. 427, 430, 533 S.E.2d 359, 362 (2000) ("[W]e conclude that the circuit court committed reversible error by granting summary judgment without including sufficient findings of facts and conclusions of law in its ... order showing that ... deposition testimony ... was properly considered."); *Ayersman v. Div. of Environ. Protection,* 208 W.Va. 544, 547, 542 S.E.2d 58, 61 (2000) ("We hold ... that the circuit court committed reversible error by granting summary judgment without including sufficient findings of fact and conclusions of law in its final order."); *Glover v. St. Mary's Hosp.,* 209 W.Va. 695, 699, 551 S.E.2d 31, 35 (2001) ("Because the summary judgment order fails to set forth any findings of fact regarding this issue, we reverse and remand[.]"); and *Estate of Robinson v. Randolph*

County, 209 W.Va. 505, 512, 549 S.E.2d 699, 706 (2001) ("[B]ecause the final order did not comply with *Fayette County National Bank v. Lilly,* we remand the case for additional proceedings not inconsistent with this opinion.").