618 S.E.2d 373

**Michael ANGELUCCI, Plaintiff Below, Appellant,**

v.

**FAIRMONT GENERAL HOSPITAL, INC., Defendant and Third–Party Plaintiff Below, Appellee,**

v.

**National Association of Letter Carriers Health Benefit Plan, Third–Party Defendant Below.**

No. 32161.

Supreme Court of Appeals of West Virginia.

Submitted: May 10, 2005.

Filed: July 1, 2005.

Stephen M. LaCagnin, Esq., Shannon Smith Wolfe, Esq., Parween S. Mascari, Esq., Jackson Kelly, PLLC, Morgantown, for the Appellee.

The Opinion of the Court was delivered PER CURIAM.

Chief Justice ALBRIGHT and Justice STARCHER dissent and reserve the right to file dissenting opinions.

PER CURIAM.

This action is before this Court upon the appeal of the appellant and plaintiff below, Michael Angelucci, from the March 22, 2004, order of the Circuit Court of Marion County, West Virginia, granting summary judgment in favor of the appellee and defendant below, Fairmont General Hospital, Inc. The controversy concerns the appellant's indebtedness to the Hospital in the amount of $1,663.80 for cardiac rehabilitation services. In the complaint, the appellant alleged that the Hospital breached a contractual obligation to him by failing to submit the bills for the rehabilitation services to his medical benefit provider and that the Hospital wrongfully and maliciously disclosed the debt to various credit reporting companies. In granting summary judgment for the Hospital, the Circuit Court set forth findings of fact and conclusions of law, thereby confirming the appellant's responsibility to pay the $1,663.80.

This Court has before it the petition for appeal, all matters of record and the memoranda of law filed by counsel. Upon review, this Court notes that the appellant signed an agreement at the Hospital, prior to receiving treatment, which stated that he would be "directly responsible" for the payment for Hospital services not paid by his medical benefit provider. The appellant received cardiac rehabilitation services at the Hospital and does not dispute the validity or the amount of the resulting debt. Moreover, the Circuit Court determined that the Hospital, in fact, submitted invoices for the services to the appellant's medical benefit provider. The $1,663.80, however, was never paid by the provider or by the appellant. Consequently, this Court is of the opinion that the

Brent E. Beveridge, Esq., Beveridge Law Offices, Fairmont, for the Appellant.

Circuit Court was warranted in granting summary judgment in favor of the Hospital.

Accordingly, the March 22, 2004, order of the Circuit Court of· Marion County is affirmed.

## I.

### Factual and Procedural Background

From September 10, 1997 through December 19, 1997, the appellant, Michael Angelucci, received cardiac rehabilitation services from the appellee, Fairmont General Hospital, Inc., located in Marion County, West Virginia. On the first day, September 10, 1997, the appellant executed an agreement assigning the Hospital his right to benefits from his medical benefit provider for medical services. The agreement also provided that, in the event bills for such services were not paid by the benefit provider or by insurance, the appellant would be "directly responsible."

At that time, the appellant was a member of the National Association of Letter Carriers ("NALC") and was entitled to coverage under the NALC Health Benefit Plan. Fairmont General Hospital qualified as a preferred organization under the Plan, and it is undisputed that coverage was to be provided with respect to the cardiac rehabilitation services received by the appellant.[1]

According to the Hospital, four invoices for the appellant's cardiac rehabilitation services, totaling $1,947.00, were electronically transmitted to the NALC Health Benefit Plan between October 1997 and January 1998. The invoices were in the amounts of $354.00, $708.00, $590.00 and $295.00 respectively, and copies thereof were sent to the appellant. As the record indicates, NALC received the latter invoice in the amount of $295.00, and made a partial payment of $283.20, leaving a total balance due in the amount of $1,663.80. NALC asserted, however, that it never received the earlier invoices and that, pursuant to the terms of the Health Benefit Plan, it is now too late to pay them. An on-going dispute then ensued between the appellant and the Hospital concerning whether the Hospital had, in fact, submitted the bills to the NALC Health Benefit Plan for payment. Subsequently, the Hospital placed the account with collection agencies, and the debt was disclosed to various credit reporting companies.

In October 2001, the appellant completed a bank loan application to refinance his home. According to the appellant, it was during the processing of the application that he first learned he was mistaken in assuming that the $1,663.80 debt had been resolved between the Hospital and the NALC Health Benefit Plan. The appellant also learned at that time that the debt had been disclosed to the credit reporting companies. The appellant asserts that, although the bank, Branch Banking & Trust Co. (BB & T), approved the loan, he was denied the optimum interest rate because of the $1,663.80 debt.[2]

On October 23, 2002, the appellant filed an action in the Circuit Court of Marion County against the appellee, Fairmont General Hospital, Inc. The complaint set forth three counts alleging: (1) that the Hospital breached a contractual obligation to the appellant by failing to submit the bills for cardiac rehabilitation services to his medical benefit provider, the NALC Medical Benefit Plan, (2) that the Hospital wrongfully and maliciously disclosed the debt to various credit reporting companies and (3) that the appellant is thus entitled to damages and injunctive relief requiring the Hospital to facilitate the removal of the $1,663.80 debt from the

---

1. The NALC Health Benefit Plan is a federal employees health benefit plan established under the Federal Employees Health Benefit Act. 5 U.S.C. § 8901 (1998).

2. A letter dated March 7, 2003, from BB & T to appellant's counsel stated in part:

We wrote a new mortgage for Mr. Angelucci [in] January, 2002. We were not able to offer him the best "secondary" rate at that time due to some unpaid collections, primarily, one placed by Fairmont General Hospital in the amount of $1,663. I do not recall the specific obstacles at that time, since I do not have a copy of his loan file.

The bank had previously described the appellant's loan application as "high risk." The appellant's credit reports revealed a number of other unpaid accounts. During his deposition, the appellant explained that many of the bills he had difficulty paying were the result of an illness suffered by his son.

records of the credit reporting companies. The Hospital filed an answer denying the allegations of the complaint and the relief requested therein. In addition, the Hospital filed a counterclaim alleging that the appellant is liable for the $1,663.80 debt.[3]

Subsequently, the Hospital filed a motion for summary judgment. Following a consideration of the appellant's response and a hearing conducted in January 2004, the Circuit Court granted the motion and entered summary judgment in favor of the Hospital. The order of March 22, 2004, setting forth findings of fact and conclusions of law, states in part as follows:

> The Court is of the opinion that it is highly questionable as to whether or not there was a "contract" between Mr. Angelucci and FGH [Fairmont General Hospital, Inc.] regarding the submission of his bills to his insurance carrier [NALC]. Mr. Angelucci cannot recall showing FGH staff his insurance card or completing paperwork to prove an arrangement for FGH to directly submit his medical bills to NALC. * * * On the other hand, FGH did submit Mr. Angelucci's bills to his insurance company for payment. * * * Additionally, when Mr. Angelucci received cardiac services from FGH, he signed the ... form acknowledging responsibility for any expenses which his insurance company did not pay.

> Mr. Angelucci has produced no evidence of fraud, intent or malice on the part of FGH and no evidence that FGH knowingly breached any duty to him. * * * Mr. Angelucci acknowledges the debt and that FGH had every right to submit the bills to a collection agency when they remained unpaid. Thus, FGH was under no duty to remove a debt with accurate information from Mr. Angelucci's credit report. * * * Mr. Angelucci's debt was valid, and FGH had a right to take action in its collection of the debt. Furthermore, Mr. Angelucci

has provided no proof his credit rating would be higher in the absence of the FGH debt.

## II.

### Discussion

■ Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is proper where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Mueller v. American Electric Power Energy Services*, 214 W.Va. 390, 392–93, 589 S.E.2d 532, 534–35 (2003); 11A M.J., *Judgments and Decrees*, § 217.1 (Michie 1997). As this Court explained in syllabus point 7 of *Petros v. Kellas*, 146 W.Va. 619, 122 S.E.2d 177 (1961):

> The summary judgment procedure provided by Rule 56 of the West Virginia Rules of Civil Procedure does not infringe the constitutional right of a party to a trial by jury; it is not a substitute for a trial or a trial either by a jury or by the court of an issue of fact, but is a determination that, as a matter of law, there is no issue of fact to be tried.

Syl. pt. 3, *Harrison v. Town of Eleanor*, 191 W.Va. 611, 447 S.E.2d 546 (1994). *See also*, syl. pt. 7, *Aetna Casualty and Surety Company v. Federal Insurance Company of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Specifically, syllabus point 5 of *Wilkinson v. Searls*, 155 W.Va. 475, 184 S.E.2d 735 (1971), holds:

> A motion for summary judgment should be granted if the pleadings, exhibits and discovery depositions upon which the motion is submitted for decision disclose that the case involves no genuine issue as to any material fact and that the party who

**3.** In June 2003, the Circuit Court granted the Hospital leave to file a third-party complaint against the NALC Health Benefit Plan to enable the Hospital to seek contribution with regard to the appellant's damage claims. By order entered on January 13, 2004, however, the Circuit Court dismissed the third-party complaint upon the ground that federal preemption barred the Hospital's claim against the NALC Health Benefit Plan. As stated in footnote 1 herein, the NALC Health Benefit Plan is a federal employees health benefit plan established under the Federal Employees Health Benefit Act. 5 U.S.C. § 8901 (1998). No issue concerning the dismissal of the third-party complaint has been raised in this appeal.

made the motion is entitled to a judgment as a matter of law.

Syl., *Redden v. Comer*, 200 W.Va. 209, 488 S.E.2d 484 (1997); syl. pt. 1, *Wayne County Bank v. Hodges*, 175 W.Va. 723, 338 S.E.2d 202 (1985).

■ Upon appeal, the entry of a summary judgment is reviewed by this Court *de novo*. *Redden, supra*, 200 W.Va. at 211, 488 S.E.2d at 486; syl. pt. 1, *Koffler v. City of Huntington*, 196 W.Va. 202, 469 S.E.2d 645 (1996); syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Nevertheless, as this Court stated in syllabus point 3 of *Fayette County National Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997): "Although our standard of review for summary judgment remains *de novo*, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed." Syl., *Hively v. Merrifield*, 212 W.Va. 804, 575 S.E.2d 414 (2002); syl. pt. 3, *Glover v. St. Mary's Hospital*, 209 W.Va. 695, 551 S.E.2d 31 (2001); syl. pt. 2, *State ex rel. Department of Health and Human Resources v. Kaufman*, 203 W.Va. 56, 506 S.E.2d 93 (1998).

■ In the action now to be determined, the appellant executed an agreement in September 1997 assigning the Hospital his right to benefits from the NALC Health Benefit Plan for medical services. The agreement also provided that, in the event bills for such services were not paid through such coverage or by insurance, the appellant would be "directly responsible."[4] As the agreement stated:

4. Although the National Association of Letter Carriers and the NALC Health Benefit Plan do not constitute an insurance company, the coverage provided by the Plan and the term *insurance* are considered equivalent for purposes of this action.

5. In his September 10, 2003, deposition, the appellant testified as follows:

    Q. Just so that our record is complete and accurate as I can make it. At the time you went to Fairmont General Hospital for your

It is understood, whether I sign as agent, patient, or as "Guarantor" that I am directly responsible and will pay for services rendered and not paid by insurance. An assignment of benefits of any insurance policy or medical reimbursement plan shall not be deemed a waiver [of] the Hospital's right to require payment directly from the undersigned or the patient. The Hospital expressly reserves the right to require such payment.

The agreement concluded as follows: "I have read this form and understand its content. I have had an opportunity to ask questions which have been answered to my satisfaction." During his subsequent deposition, the appellant acknowledged his ultimate responsibility to pay the Hospital for the cardiac rehabilitation services.[5]

Here, neither the validity of the debt nor the amount thereof are in dispute. As stated above, the original amount payable, $1,947.00, was reduced to $1,663.80 through the $283.20 payment made by the NALC Health Benefit Plan. Importantly, the Circuit Court indicated that NALC had received all the invoices relating to the debt. As the March 22, 2004, order states: "FGH did submit Mr. Angelucci's bills to his insurance company for payment." That determination is supported by the affidavit of the Hospital's Director of Patient Accounting filed in the Circuit Court. The affidavit states in part:

    FGH electronically submitted invoices to NALC for services rendered to the [appellant] on a monthly basis by downloading invoices from its medical billing system, MEDITECH, to an electronic billing system, QUADAX.

cardiac rehab services, you knew that there would be charges for those services?

    A. Yes, sir.

    Q. You went there because you wanted your insurance company to pay as much as possible toward those expenses?

    A. That's true.

    Q. Nonetheless, you also understood that these charges that were being incurred at Fairmont General Hospital were for your benefit and they were your responsibility to pay?

    A. Yes, sir.

QUADAX then electronically forwards claims to the respective clearinghouse used by NALC.

FGH tracks the submission of invoices through its MEDITECH computer system, which automatically creates a log of transactions once they are electronically forwarded to QUADAX for submission to NALC or any other insurance company. Based upon the record automatically created by MEDITECH, FGH submitted four invoices for the [appellant's] cardiac rehabilitation services to QUADAX for submission to NALC: (1) a claim dated 9/30/97, submitted 10/01/97 in the amount of $354.00; (2) a claim dated 10/31/97, submitted on 11/03/97 in the amount of $708.00; (3) a claim dated 11/30/97, submitted on 12/01/97 in the amount of $590.00; and (4) a claim dated 12/31/97, submitted on 01/01/98 in the amount of $295.00.

The assertion of NALC that it did not receive the invoices, notwithstanding, an examination of the record reveals no basis for overturning the finding of the Circuit Court that the invoices were submitted to NALC for payment. The $1,663.80 never having been paid by either the NALC Health Benefit Plan or the appellant, the appellant's complaint was without justification in alleging that the Hospital wrongfully and maliciously disclosed the debt to the credit reporting companies. Consequently, the Circuit Court was warranted in granting summary judgment in favor of the Hospital.[6]

### III.

### Conclusion

Upon all of the above, the March 22, 2004, order of the Circuit Court of Marion County, West Virginia, granting summary judgment in favor of the appellee, Fairmont General Hospital, Inc., is affirmed.

Affirmed.

ALBRIGHT, Chief Justice, and STARCHER, Justice, dissenting.

We respectfully dissent to the decision of the majority of this Court. This Court is obligated to provide plenary review of a circuit court's grant of summary judgment. In so doing, "the benefit of the doubt" is to be given to the nonmoving party. *Taylor v. Culloden Pub. Serv. Dist.*, 214 W.Va. 639, 644, 591 S.E.2d 197, 202 (2003). Both the circuit court and this Court "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion." *Painter v. Peavy*, 192 W.Va. 189, 192, 451 S.E.2d 755, 758 (1994). "If there is any evidence in the record from any source from which a reasonable inference in the nonmovant's favor may be drawn as to a material fact, the moving party is not entitled to a summary judgment." *Crain v. Lightner*, 178 W.Va. 765, 769, 364 S.E.2d 778, 782 (1987).

When utilizing the appropriate standard of review, it does not appear that Fairmont General Hospital was properly granted summary judgment in this matter. A valid debt was incurred based upon Mr. Angelucci's receipt of services in late 1997, and the hospital provided ample evidence that it made at least an initial attempt to submit Mr. Angelucci's bills to the insurer.[1] Mr. Angelucci provided

---

**6.** In so holding, this Court is not unmindful of the serious harm which can result to individuals from the wrongful or malicious disclosure of accounts to credit reporting companies. *See,* syllabus point 2 of *Jones v. Credit Bureau of Huntington*, 184 W.Va. 112, 399 S.E.2d 694 (1990), concerning the federal Fair Credit Reporting Act.

In this action, however, the validity and the amount of the debt were not in dispute, and the appellant's "direct responsibility" to pay the debt was evidenced by the agreement he signed in September 1997.

**1.** As noted in the majority opinion, subsequent to the filing of Mr. Angelucci's complaint against the hospital, the hospital filed a Third Party Complaint against Mr. Angelucci's insurer, the National Association of Letter Carriers Health Benefit Plan (hereinafter NALC), alleging that it had failed to pay the $1,663.80 in medical bills which the hospital had submitted. The insurer was thereafter dismissed pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure based upon a federal preemption bar to the Third Party Complaint.

According to the record, the hospital was a Preferred Provider Organization within the NALC health benefits plan. The arrangement between the hospital, as medical provider, and the NALC apparently permitted the hospital to

evidence that the insurer did not receive many of the bills.

It is readily apparent that a communications error had been made at some level. The mistake could potentially have been corrected by resubmission of bills or by contact between the hospital billing office and the insurer. The hospital alleges, however, that it neither had an actual contractual duty nor voluntarily assumed the obligation to directly bill the insurer or to pursue the issue of payment by the insurer. Mr. Angelucci contends that the hospital had the obligation to directly submit bills to the insurer and maintains that such obligation was created through two mechanisms: the hospital/patient contractual relationship and the hospital's voluntary assumption of the responsibility of communication and submission of bills to the insurer. Indeed, even absent an express contractual duty, Mr. Angelucci contends that the voluntary assumption of the responsibility created a continuing obligation, implied if not express, on the part of the hospital to pursue the payment issues with the insurer. The existence and extent of the hospital's obligation to submit bills and pursue payment created a genuine issue of material fact which should have precluded a grant of summary judgment.[2]

When the insurer became aware of the outstanding bills, it denied payment of those bills due to the excessive passage of time. The record reflects that the hospital ultimately wrote off the outstanding bills in 1999. Despite the fact that the hospital wrote off the bills in 1999, the hospital sought payment from Mr. Angelucci in 2002 after he instituted the underlying action based upon his realization that his credit report had been detrimentally affected by the debt to the hospital.

This quandary represents a regrettable situation encountered by patients receiving medical treatment and anticipating that the medical provider will handle the submission of bills to the insurer and maintain sufficient contact with the insurer to assure proper payment. It is surely the hospital's underlying notion in this case that Mr. Angelucci's reliance on the hospital in this regard was misplaced. Yet that contention leaves the patient without recourse, as Mr. Angelucci currently finds himself. The hospital and the insurer failed to resolve the payment issue, and after a sufficient passage of time[3] to permit the insurer to deny payment, the patient is left with the monetary responsibility. Three years after the hospital writes off the bill, the hospital is permitted to recover the debt from the patient. There is something inherently inequitable in that result, and if the facts had been properly presented to a jury, the result may have been quite different. Neither this Court nor the lower court had a right to "try issues of fact; a determination can only be made as to whether there are issues to be tried." *Hanlon v. Chambers,* 195 W.Va. 99, 105, 464 S.E.2d 741, 747 (1995). Based upon the majority's decision in this case, a jury will not hear these facts, and the decision in favor of the hospital will stand. We respectfully dissent.

---

provide services to NALC plan members at reduced rates.

**2.** *See City of Indianapolis v. Twin Lakes Enter., Inc.,* 568 N.E.2d 1073, 1079 (Ind.App.1991) ("While the question of whether a certain or undisputed state of facts establishes a contract is one of law for the court, where the existence and not the validity or construction of a contract or the terms thereof is the point in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury to determine whether a contract in fact exists"); *AFSCME Councils 6, 14, 65 & 96 v. Sundquist,* 338 N.W.2d 560, 567 (Minn.1983) (Generally, whether implied contract exists and terms of contract are questions of fact to be determined jury);

*Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 62 n. 18, 459 S.E.2d 329, 339 n. 18 (1995) ("While the determination of what constitutes a contract under our relevant cases is a question of law, the determination of whether particular circumstances fit within the legal definition of a contract under our cases is a question of fact"); *Frost Constr. Co. v. Lobo, Inc.,* 951 P.2d 390, 394 (Wyo.1998) (holding that whether contract has been formed, exact terms of contract, and whether there was breach of terms are questions of fact).

**3.** "Any sufficiently advanced bureaucracy is indistinguishable from molasses." Unknown author.