**FILED**

**May 22, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia ex rel.**
**Justice Holdings, LLC,**

**Petitioner**

**v.)  No. 25-401** (Raleigh County 22-C-57)

**The Honorable Todd A. Kirby, Judge**
**of the Circuit Court of Raleigh County;**
**Glade Springs Village Property**
**Owners Association, Inc.; United Bank;**
**and Greenbrier West Virginia Holdings, LLC,**

**Respondents**

# MEMORANDUM DECISION

Petitioner Justice Holdings, LLC, (hereinafter "Justice Holdings") invokes this Court's original jurisdiction to prohibit enforcement of the Circuit Court of Raleigh County's December 5, 2024 "Final Order and Decree of Judicial Foreclosure and Sale of Real Estate" directing that Justice Holdings' properties at Glade Springs Village ("GSV") be sold pursuant to statutory liens for non-payment of assessments.[1] Justice Holdings argues that the liens are invalid because the

---

[1] Justice Holdings appears by counsel Ronald H. Hatfield Jr. and Steven R. Ruby; Glade Springs Village Property Owners Association, Inc. ("GSVPOA") appears by counsel Mark A. Sadd. Current GSV property owners John M. Slack III and John W. Stroud Jr. filed an amicus curiae brief in support of GSVPOA.

Respondents United Bank and Greenbrier West Virginia Holdings, LLC, are secured creditors/assignees of Justice Holdings; United Bank appears by counsel, Zachary J. Rosencrance and Joshua A. Lanham and Greenbrier West Virginia Holdings, LLC appears by counsel Steven R. Ruby and Raymond S. Franks II. Neither United Bank nor Greenbrier West Virginia Holdings, LLC participated in oral argument, although Greenbrier West Virginia Holdings, LLC filed a summary response in support of petitioner's request for extraordinary relief.

1

Declaration pursuant to which the assessments were levied failed to comply with the Uniform Common Interest Ownership Act ("UCIOA"). GSVPOA argues this issue is barred by res judicata because it was litigated to finality in *Justice Holdings LLC v. Glade Springs Village Property Owners Assoc., Inc.*, 250 W. Va. 563, 906 S.E.2d 216 (2023) ("*Justice Holdings I*").[2]

Upon consideration of our standard for issuance of a writ and the applicable law, we find that this case satisfies the "limited circumstances" exception set forth in Rule 21(d) of the West Virginia Rules of Appellate Procedure. We grant Justice Holdings extraordinary relief, as moulded, and issue a writ of mandamus directing the Circuit Court of Raleigh County to enter an order containing more detailed findings of fact and conclusions of law sufficient to allow this Court to conduct meaningful appellate review.

## I. Factual and Procedural History

Because the factual and procedural history of the underlying controversy is detailed at length in *Justice Holdings I*, we include only those contextual facts pertinent to the instant petition for writ of prohibition. The underlying controversy originated with Justice Holdings' filing of Case No. 19-C-481 in the Circuit Court of Raleigh County ("Case 481"), against GSVPOA for alleged breach of a utilities loan agreement between GSVPOA and Justice Holdings' predecessor in interest, Cooper Land. *Id*. at 571, 906 S.E.2d at 224. In response, GSVPOA filed a counterclaim against Justice Holdings, in part, for non-payment of assessments on certain GSV properties held by Justice Holdings. *Id*. On November 3, 2021, GSVPOA was awarded summary judgment against Justice Holdings for non-payment of assessments for fiscal years 2010-2011 through 2020-2021 in the amount of $6,073,692.18. *Id*. at 573-74, 906 S.E.2d at 226-27. A December 3, 2021 judgment order in that amount was entered and Justice Holdings filed an appeal to this Court. *Id.* at 574, 906 S.E.2d at 227. While *Justice Holdings I* was pending before this Court, on March 4, 2022, GSVPOA filed the instant civil action, Case No. 22-C-57, for enforcement of the judgment awarded in *Justice Holdings I*. On January 13, 2023, GSVPOA amended the complaint to add counts for enforcement of "statutory assessment liens" for fiscal years 2019-2023.

On June 15, 2023, we issued our opinion in *Justice Holdings I* holding, in pertinent part, that GSV was subject to and governed by the UCIOA, vacating the monetary judgment awarded,

United Bank filed a brief disavowing any position on the issue presented by Justice Holdings and instead requested the Court to "address the narrow but critical issue of the scope of lien priority . . . as it affects United Bank's interests." United Bank argues that the priority of its lien is a "subsidiary question" fairly comprised within Justice Holdings' requested writ of prohibition. *See* W. Va. R. App. Proc. 16(d)(3). ("The statement of a question will be deemed to include every subsidiary question fairly comprised therein."). Because we find the basis of Justice Holdings' request for extraordinary relief limited to the validity of the liens subject to the December 5, 2024 order, we decline to address the priority of the liens as requested by United Bank.

[2] GSVPOA also filed a motion to dismiss Justice Holdings' petition for writ of prohibition on the same basis. Given our grant of extraordinary relief as moulded, we deny the motion to dismiss as moot.

and remanding issues surrounding the "assessments order" to the circuit court. *Id*. at 587, 906 S.E.2d at 240. In particular, this Court concluded that despite the circuit court's "sweeping order" regarding the assessments, we could not "determine whether the circuit court considered pertinent provisions in the [UCIOA] potentially applicable to its legal conclusions[.]" *Id*. We therefore reversed, vacated, and remanded the assessments order because it made "'insufficient findings of fact and conclusions of law' to allow us to adequately review the underlying merits of [the court's] grant of summary judgment related to these assessments." *Id*.

On October 31, 2023, GSVPOA again amended the complaint in the underlying matter, removing its request for enforcement of the now-vacated judgment awarded in *Justice Holdings I*, leaving only the "statutory assessment liens" at issue. GSVPOA then moved for appointment of a special commissioner to determine the lien priority and conduct a sale of petitioner's properties for non-payment of assessments. The circuit court granted the motion and issued two rulings: one in the form of a March 28, 2024 "order" discussing the issues surrounding appointment of the commissioner and the need to assess the *validity* of the liens and a second, April 12, 2024 order reducing its March 28 ruling on the appointment to a more formal order.

In its March 28 ruling, the circuit court attempted to address whether the special commissioner appointment and sale fell outside of the remand and mandate of *Justice Holdings I*. In effect, the circuit court characterized the two actions as distinct, reasoning that *Justice Holdings I* sought a monetary judgment and the underlying action sought enforcement of liens automatically created by statute upon non-payment of assessments. The court described the issues subject to the remand in *Justice Holdings I* as follows:

> The defect identified in the *Justice Holdings* [*I*] opinion is that [the circuit] court did not make the factual findings necessary to the determination that *assessments been [sic] properly imposed in accordance with the declaration*, whether budgets had been ratified for the relevant years and assessments calculated "in accordance with the allocations set forth in the declaration," and the payment or crediting of surplus funds.

(Emphasis added).[3]

Pertinent to the issue raised in this petition for writ of prohibition, the March 28 ruling alludes to an alleged defect in the 2001 Declaration that created GSV. The order acknowledges that Justice Holdings' answer to the amended complaint in the instant matter "presents issues associated with the requirements of the declaration, [and] the addition of properties subsequent to the declaration[.]" Finding that "[t]he determination of the *existence*, extent, and priority of the claimed assessment liens is ultimately a matter to be determined by the court[,]" the ruling provides that it is the circuit court's "responsibility" to ensure that the special commissioner's findings about

---

[3] Further, the circuit court acknowledged in its March 28 ruling that *Justice Holdings I* contained "guidance" about the *existence* of any such liens: "[T]he opinion provides important guidance as to the factual basis upon which the existence and amount of the statutory liens must be determined[.]"

the "*existence* and priority of liens" establishes a sufficient factual basis upon which to proceed to sale of the properties for non-payment of assessments. (Emphasis added). However, the circuit court's April 12 order charges the *special commissioner* with determining the liens' "validity," without further elaboration.[4]

On June 6, 2024, the special commissioner issued his report, which addresses the priority of the subject liens, but neither their general validity nor any specific issues raised by Justice Holdings regarding alleged defects in the Declaration. As a result, Justice Holdings objected to the report, again arguing that the Declaration defects invalidated the liens.

The circuit court held a hearing on the report and Justice Holdings' objection on October 11, 2024. Specifically, Justice Holdings argued that the liens are invalid because the Declaration failed to preserve development rights and special declarant rights in accordance with the UCIOA— which this Court held was applicable to GSV in *Justice Holdings I*. Justice Holdings claims that only a one-acre lot was included in the original May 2001 Declaration and the additional 2,800 lots were never properly added to GSV; therefore, there were no properly added lots upon which to levy assessments. Without specifically referencing res judicata, GSVPOA argued primarily that this issue "has already been addressed by this [c]ourt in other proceedings." GSVPOA argued that any alleged Declaration defect was "insubstantial," the assessments were otherwise authorized by common law, and that Justice Holdings was "estopped from arguing this, it's been litigated."[5]

With respect to our remand in *Justice Holdings I*, Justice Holdings' counsel argued that the validity and priority of liens were "issues . . . more properly addressed within the context of [Case 481] . . . . It is a case that *remains pending on remand* from the Supreme Court before this [c]ourt." (Emphasis added). Discussing our opinion and the scope of our remand, counsel further argued that the validity of the liens should be addressed in Case 481 "because that's what the Supreme

---

[4] The order provides:

The Special Commissioner shall have two initial tasks in this matter:

(i) To ascertain and determine the validity, scope and priority of all liens encumbering the Lots, the names and identities of the holders of such liens, the amounts secured by such liens, and the relative priorities of such liens and file a report ("Report") of the same to this Court[.]

[5] Although the circuit court orally agreed with GSVPOA that any defect was "insubstantial" under West Virginia Code § 36B-2-103(d), Justice Holdings claims this provision pertains only to marketability of title and does not absolve Declaration defects. In response to GSVPOA's argument that even if the statutory requirements were not met, the common law permits the addition of lots and levying of assessments, Justice Holdings argues that common law cannot be applied where it is inconsistent with the UCIOA, as per West Virginia Code § 36B-1-108: "The principles of law and equity . . . supplement the provisions of this chapter, except to the extent inconsistent with this chapter." The order at issue contains no discussion of these provisions or their impact on the liens' validity.

4

Court directed this [c]ourt to do . . . within the framework of UCIOA . . . [to] determine whether the various provisions of UCIOA had been met and whether these liens are valid."[6] Neither the parties' briefs nor the appendix record reveals what, if anything, occurred in Case 481 following our remand in *Justice Holdings I.*

Putting a finer point on the scope of the *Justice Holdings I* remand and in response to GSVPOA's contention that the issue had been litigated, Justice Holdings' counsel argued that by filing and litigating the underlying lien enforcement action, GSVPOA was "try[ing] to sidestep the Supreme Court's directive to build a record to determine that the assessments comply with all of the provisions of UCIOA[] . . . [by] fil[ing] this separate lawsuit and . . . ignor[ing] the requirement[s] that UCIOA places upon the language of the Declaration itself."

The resulting Final Order[7] authorizing the sale of Justice Holdings' properties for non-payment of assessments was entered on December 5, 2024—it is this order Justice Holdings seeks to prohibit. However, the Final Order contains no identification or analysis of the issues raised by the parties below, i.e. the Declaration defects, GSVPOA's contention that the issue was litigated to finality in *Justice Holdings I,* or the related issue of whether the issue falls within our remand in *Justice Holdings I.* With respect to certain prerequisites for levying of assessments, the order finds only that GSVPOA

> complied with the requirements of preparing and adopting the annual budget for its Members for each of its fiscal years . . . in issue in this civil action; that the common expense liabilities . . . were assessed against all of the lots . . . in accordance with the allocations set forth in the GSV Declaration . . . and that there existed no surplus or surpluses . . . upon completion of . . . operations for each of those years.[8]

---

[6] Justice Holdings' counsel further characterized our opinion as finding that "there was no record to determine whether any of the liens sought to be enforced in that case were valid[]" and that before they could be enforced there must be a "determination that there was authority to make those assessments to begin with. . . . [that's] what the Supreme Court tasked this [c]ourt with doing in [Case 481] . . . and should be done there[.]" Like the issue squarely presented in this petition for writ of prohibition, the subject order contains no ruling or discussion of whether this issue fell within the scope of our remand in *Justice Holdings I.*

[7] Although captioned as a "Final Order," the parties ostensibly regarded the order as interlocutory. *See infra*, n.10.

[8] These issues were identified in *Justice Holdings I* as some—but not all—of the specific assessment requirements regarding which the circuit court failed to issue findings of fact and conclusions of law. However, nothing in *Justice Holdings I* purports to establish the entire universe of legal issues spawned by the Court's conclusion that GSV is governed by the UCIOA:

Critically, the appendix record further reveals that on December 5, 2024, Justice Holdings' counsel wrote to the circuit court regarding the "Final Order" requesting that the order include 1) language certifying it as a final, appealable order or 2) "findings of fact and conclusions of law necessary for the Defendant to seek an extraordinary writ in accordance with Syllabus Point 6 of *State ex rel. Allstate Ins. Co. v. Gaughan,* 203 W. Va. 358, 508 S.E.2d 75 (1998)." Neither the briefs nor the record indicate what became of this request and no amended order has been made available to the Court.

## II. Standard for Issuance of a Writ

As to the issuance of a writ of prohibition,

[i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is

---

From the assessments order, we cannot determine whether the circuit court considered pertinent provisions in the Uniform Act potentially applicable to its legal conclusions and judgment calculations, *including* the requirement that a budget [was] to be ratified by unit owners, *see* W. Va. Code § 36B-3-103(c), and that expenses must be assessed against all units in accordance with allocations set forth in the Declaration, *see* W. Va. Code §§ 36B-2-107; 36B-3-115(b). Similarly, we cannot determine whether the circuit court considered the Uniform Act requirement that, unless otherwise provided in the Declaration, surplus funds of the association "must be paid to the unit owners in proportion to their common expense liabilities or credited to them to reduce their future common expense assessments." W. Va. Code § 36B-3-114. The circuit court made no findings of fact or conclusions of law relating to any of these additional provisions in the Uniform Act.

*Id*. at 587, 906 S.E.2d at 240 (footnotes omitted) (emphasis added).

6

clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). With this familiar standard in mind, we consider Justice Holdings' request for extraordinary relief.

### III. Discussion

Justice Holdings argues that the sale of the subject properties to satisfy the statutory assessment liens exceeds the circuit court's legitimate authority because the Declaration's lack of compliance with the UCIOA invalidates the liens. In response, however, rather than defending against Justice Holdings' attack on the liens' validity, GSVPOA *exclusively* argues this issue was litigated to finality in *Justice Holdings I* and is therefore barred by res judicata.[9]

Despite discussing these issues at length during the hearing on Justice Holdings' objection to the special commissioner's report, the order Justice Holdings seeks to prohibit contains no findings of fact or conclusions of law regarding the specific defects alleged with respect to the Declaration or the applicability of res judicata. In that regard, Justice Holdings requested an order containing such findings and conclusions—a request which the circuit court ostensibly disregarded, based upon our review of the appendix record and representations of the parties. As cited by Justice Holdings in its request for a more detailed order, this Court has held:

> A party seeking to petition this Court for an extraordinary writ based upon a non-appealable interlocutory decision of a trial court, must request the trial court set out in an order findings of fact and conclusions of law that support and form the basis of its decision. In making the request to the trial court, counsel must

---

[9] GSVPOA summarily argues that this issue has already been "squarely resolved adversely" to Justice Holdings by the circuit court in *Justice Holdings I* and as "largely affirmed" by this Court. Without providing specifics, GSVPOA states that *Justice Holdings I* is the "law of the case" and that all three requirements for res judicata are met: adjudication to finality, identical parties, and an identical issue.

To the extent GSVPOA attempts to demonstrate that "this issue" was resolved in *Justice Holdings I,* it cites an October 2020 circuit court order that merely quotes the Declaration, claiming this demonstrates the court "found and concluded" that development rights were properly reserved under the UCIOA. But this is precisely the Declaration language Justice Holdings argues is inadequate. It also quotes another portion of the circuit court's order that merely describes discovery produced relating to the "creation, existence and ownership of lots" within GSV, claiming that this "addressed" Justice Holdings' claim that it did not have the power to create additional lots; however, there are no findings or conclusions in that regard. Finally, GSVPOA argues that it "prevailed on all issues, including the instant claim" quoting the portion of *Justice Holdings I* that states "Justice Holdings held 334 unsold Inventory Lots and that it never paid assessments on those lots[.]" Clearly, this summary of facts reflects no consideration of the issue raised here, much less a ruling on it.

7

inform the trial court specifically that the request is being made because counsel intends to seek an extraordinary writ to challenge the court's ruling. *When such a request is made, trial courts are obligated to enter an order containing findings of fact and conclusions of law.* Absent a request by the complaining party, a trial court is under no duty to set out findings of fact and conclusions of law in non-appealable interlocutory orders.

Syl. Pt. 6, *Gaughan*, 203 W. Va. at 358, 508 S.E.2d at 75 (emphasis added). As we have further explained,

[a]ppellate courts, on review, rely heavily on the trial judge's order; the order is extremely important. The order often assists appellate courts in understanding what the trial court did and why, and good orders often rebut allegations made by appealing parties in briefs and arguments. If the lower tribunal is interested in having its decision affirmed, then the lower court should assist the appellate courts by providing comprehensive, well-reasoned orders. Submission of a comprehensive order assists an appellate court in finding a way to affirm the lower court's order.

*P.T.P., IV by P.T.P, III v. Bd. of Educ. of the Cty. of Jefferson*, 200 W. Va. 61, 65, 488 S.E.2d 61, 65 (1997) (footnote omitted); *see Hively v. Merrifield*, 212 W. Va. 804, 808, 575 S.E.2d 414, 418 (2002) ("[B]efore this Court can review the circuit court's reasons for . . . [ruling as it did], we must know what those reasons are.").

In *State ex rel. Navient Sols., LLC v. Wilson*, No. 19-0874, 2020 WL 2765857, at *1 (W. Va. May 27, 2020) (memorandum decision) we faced a similarly deficient order and issued a writ of mandamus "as moulded, directing the Circuit Court of Ohio County to enter an order containing more detailed findings and conclusions sufficient to allow this Court to consider the substance of the court's ruling." We found that, despite petitioner's request for a more detailed order, the circuit court refused and the insufficiency of the order "inhibit[ed]—if not preclude[ed]—this Court's review of the merits-based issues asserted in the petition for writ of prohibition[.]" *Id*. at *3. Without a detailed order it was "impossible to determine whether the lower court's action [wa]s 'clearly erroneous' for purposes of issuing a writ of prohibition, where it ha[d] presented the Court with no analysis[.]" *Id*. at *5. We therefore converted the requested writ of prohibition into mandamus and granted it as moulded, directing the circuit court to issue a detailed order upon which we could evaluate the requested writ. Importantly, we distinguished our outright refusal of a writ in *State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 829 S.E.2d 35 (2019)—which also presented an inadequate order—by explaining that petitioner in *Navient* did what the petitioner in *Vanderra* failed to do: requested a more detailed order sufficient for review pursuant to *Gaughan*. *Navient*, 2020 WL 2765857, at *5. Like the petitioner in *Navient*, we find that Justice Holdings properly requested, and apparently did not receive, an order sufficient for our review,

entitling it to a writ of mandamus requiring the circuit court to comply with its request for a *Gaughan* order.[10]

Accordingly, we grant Justice Holdings a writ of mandamus and direct the Circuit Court of Raleigh County to issue an order containing sufficient detail and exposition of its analysis such as to permit review of the substance of its December 5, 2024, ruling ordering the sale of Justice Holdings' properties, in accordance with our longstanding requirements for issuance of an extraordinary writ.

Writ granted as moulded.

.

**ISSUED**: May 22, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Judge Matthew Delligatti, sitting by temporary assignment
Judge Michael W. Asbury, Jr., sitting by temporary assignment

**DISQUALIFIED:**

Justice William R. Wooton

---

[10] We note that while Justice Holdings made a proper request for a *Gaughan* order, its request for amendment of the December 5, 2024 order alternatively requested the "Final Order" be certified as final and appealable. *See* W.V.R.C.P. 54(b). Our issuance of a writ of mandamus requiring the circuit court to comply with petitioner's request for a *Gaughan* order should not be read as foreclosing Rule 54(b) certification or the filing of a direct appeal if deemed appropriate by the parties and consistent with our caselaw. *See* Syl. Pt. 2, *Durm v. Heck's, Inc.*, 184 W.Va. 562, 401 S.E.2d 908 (1991) ("Where an order . . . completely disposes of any issues of liability as to that party, the absence of language prescribed by Rule 54(b) of the West Virginia Rules of Civil Procedure indicating that 'no just reason for delay' exists and 'direct[ing] . . . entry of judgment' will not render the order interlocutory and bar appeal provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect."); *see also* Syl. Pt. 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953) ("Prohibition lies only to restrain inferior courts from proceedings in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for [a petition for appeal] or certiorari."). We caution, however, that irrespective of the parties' chosen recourse, the legal issues presented by the parties must be properly developed, raised to the circuit court in the first instance, and result in adequate findings of fact and conclusions of law to permit appellate review.

Justice Gerald M. Titus III