419 S.E.2d 8

**Fred PENNINGTON and Colette Elaine Pennington Individually, and as the Parents and Natural Guardians of Lisa Denise Pennington, an Infant Plaintiff Below, Appellees,**

v.

**BLUEFIELD ORTHOPEDICS, P.C., a Corporation, and Yogesh Chand, M.D., an Individual, Defendant Below, Appellants.**

**No. 20463.**

Supreme Court of Appeals of West Virginia.

Submitted April 28, 1992.

Decided June 11, 1992.

Laurie Garrigan McKowen, Masters & Taylor, L.C., Charleston, for appellees.

Harold D. Brewster, Jr., Brewster, Morhous & Cameron, Bluefield, for appellants.

BROTHERTON, Justice:

The appellants, defendants below, are Bluefield Orthopedics, P.C., and Yogesh Chand, M.D., who appeal from the lower court's refusal to grant their post-trial motion and offset an adverse $53,000 medical malpractice verdict against the $72,000 settlement paid by the driver of the vehicle who caused the initial injuries in this case.

On May 19, 1984, Lisa Pennington was injured in an automobile accident while riding in a car driven by Kevin Keyes. On May 20, 1984, an emergency room physician diagnosed several possible injuries and recommended that Lisa take her x-rays and see Dr. R.R. Raub, an orthopedic surgeon. Lisa saw Dr. Raub on May 21, 1984, and Dr. James Thomas and Dr. Edward Litz, an orthopedist, on May 22, 1984. Dr. Litz's records indicate that Lisa's only problem at the time was a fractured right clavicle. Lisa went to Dr. Yogesh Chand on May 30, 1984, for treatment of the fracture.

Dr. Chand performed a closed reduction of the clavicle fracture on May 31, 1984, and Lisa was placed in a cast. On June 5, Dr. Chand performed an open reduction and pinning of the clavicle because fragments had become displaced. On July 9, it was determined that osteomyelitis had developed in the clavicle at the site of the open reduction. Lisa was hospitalized for thirty days so that she could receive antibiotics and six cleansing procedures could be performed on the operative site to clear up the osteomyelitis.

The Penningtons asserted a claim against the driver, Kevin Keyes, and negotiated a $72,000 settlement. The Circuit Court of Mercer County approved the settlement in a summary proceeding. A petition and order stated that the settlement was for:

> ... any and all claims and demands which said Lisa Denise Pennington, an infant, has or may hereafter have against Kevin Keyes for and on account *of any injury sustained* by the said Lisa Denise Pennington *including a fractured right clavicle, which was treated by an open reduction, external fixation, using a Steinmann pin, complicated by osteomyelitis,* while a passenger in an automobile driven by Kevin Keyes.... (Emphasis added.)

The settlement was payable in two installments, and from these proceeds, $10,482 was authorized to be paid to Fred Pennington as compensation for expenses incurred for Lisa's treatment which were not covered by his insurance. With regard to Kevin Keyes, the order stated that the $72,000 payment was:

> ... in settlement and satisfaction of any and all claims and demands which said Lisa Denise Pennington ever had, now has or may hereafter have, for or on account of any and all injuries sustained by her, arising out of said accident, and for or on account of all damages therefore, and in consideration of the release of the said Kevin Keyes, from any and all claims and demands for said injuries, be, and the same is, hereby approved....

Following the settlement with Keyes, the Penningtons filed suit against Dr. Chand and Bluefield Orthopedics, alleging negligent medical treatment. The defendants denied any negligence, and the case went to trial.

The plaintiffs filed a motion in limine prior to trial, requesting that the court preclude any reference to the Keyes settlement during trial. The trial court granted this motion. The defendants state that they agreed to defer the issue of an offset credit from the Keyes settlement until after judgment, except for $3,465, which represented expenses already paid to Fred Pennington that the plaintiffs planned to introduce at trial as expenses they could also recover against the defendant.

It is important to point out that the defendants do not argue that the Penningtons were barred from proceeding against them because of the prior release of Keyes. For this reason, the defendants claim that they did not see the point in raising the issue of release in their pleadings. However, the defendants maintain that they did raise the issue of being allowed a setoff against the prior $72,000 settlement in the event of an adverse verdict.

The jury returned a $50,000 verdict for Lisa Pennington and awarded $3,000 to her parents. The defendants then moved the court to permit the earlier $72,000 settlement to offset the $53,000 judgment against them. The motion was denied by an order dated May 17, 1991, from which the defendants appeal.

The defendants now argue that because Kevin Keyes was the original tortfeasor, he is liable for all injuries and damages incurred by Lisa Pennington, including any aggravation of the original injuries resulting from Dr. Chand's allegedly negligent medical treatment. Further, the defendants also contend that the plaintiffs' damage claim against Keyes included the same damages which they later asserted against Dr. Chand, and that the tortfeasors' liability in this case is joint and not capable of division.

■ It is our determination that Keyes and Chand were not joint tortfeasors, but instead were successive and independent tortfeasors, defined by this Court as those whose negligence "did not 'in point of time and place concur,' which is [the] test for joint or concurrent negligence." *Sansom v. Physicians Associates, Inc.,* 182 W.Va. 113, 386 S.E.2d 480 (1989). Any alleged negligence by the driver, Kevin Keyes, clearly "did not 'in point of time and place concur' " with the allegedly negligent medical treatment which the plaintiff subsequently received from Dr. Chand.

■■ Having ascertained that Keyes and Chand were successive and independent tortfeasors, we now consider what effect, if any, the plaintiffs' release of Kevin Keyes "from any and all claims and demands for said injuries" had on the plaintiff's subsequent suit against Dr. Chand. In *Thornton v. Charleston Area Medical Center*, 158 W.Va. 504, 213 S.E.2d 102 (1975), this Court adopted the modern rule which provides that the release of an original tortfeasor may not necessarily bar further recovery against a successive and independent tortfeasor who is negligent in the treatment of the injury caused by the original tortfeasor.[1] "Beyond question, an injured party has a separate cause of action against a successive and independent tortfeasor who negligently renders medical or hospital care in the treatment of injuries suffered at the hands of another." *Id.* at 108. We found that it was "patently illogical to conclusively presume, in the absence of particular language indicative of such an intention, that a release of the original tortfeasor bars recovery from the subsequent tort-feasor." *Id.* We further explained the effect of our conclusion in syllabus point 5, wherein we reiterated that:

> ... [T]he execution of a general release in favor of the original tort-feasor or dismissal with prejudice of a civil action against such tort-feasor is *prima facie* evidence of the intention of the injured party to accept the same as full satisfaction of all damages which naturally flow from the original injury, in the absence of language or circumstances in the release or dismissal indicating a contrary intention of the parties; but whether such release or dismissal is a bar to further action for malpractice against the treating physician or hospital providing care is a question of fact to be answered from the intention of the parties.

"To determine the intention of the parties with reference to release of successive tort-feasors, the injured party is entitled to introduce parol evidence to explain the terms of a contract of release in favor of, or the circumstances attendant to a dismissal with prejudice of a civil action against, the original tort-feasor." *Id.* at syl. pt. 6.

■■ In this case, there is no evidence whatsoever to suggest that the plaintiffs intended for their release of Keyes to also serve as a release of Dr. Chand. In fact, this clearly was not their intent, because after reaching the settlement with the driver, the plaintiffs immediately filed suit against Dr. Chand, alleging malpractice. This conclusion is also supported by the defendants' own admission that they did not believe that the plaintiffs were barred as a matter of law from proceeding against them because of the plaintiffs' release of the driver. In their brief to this Court, the defendants:

> ... acknowledge that separate causes of action may be asserted against the automobile operator and the subsequent treating physician. There was no allegation of release of liability in the pleadings nor was that issue raised prior to trial and it is not an issue in this case. If the defendants had felt that as a matter of law the release of the automobile operator was also a release of any claim against them, then defendants would have raised that issue. Defendants did not believe the original release was broad enough to cover them.

Instead of arguing that the plaintiffs were barred from proceeding against them because of the release, the defendants now ask this Court to offset the $53,000 malpractice judgment against the $72,000 settlement that the plaintiffs reached with Keyes. Therefore, the sole issue for our determination is whether this type of verdict credit is proper in this case.

---

**1.** For discussion of a related issue, *see Rine v. Irisari*, 187 W.Va. 550, 420 S.E.2d 541 (1992), in which this Court held that "[a] negligent physician is liable for the aggravation of injuries resulting from foreseeable subsequent negligent medical treatment, where that subsequent medical treatment is undertaken to mitigate the harm caused by the physician's own negligence." *See generally,* P.G. Guthrie, Annotation, *Release of One Responsible for Injury as Affecting Liability of Physician or Surgeon for Negligent Treatment of Injury,* 39 A.L.R.2d 260 (1955).

■ "It is generally recognized that there can only be one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury. A plaintiff may not recover damages twice for the same injury simply because he has two legal theories." *Harless*, 169 W.Va. 673, 289 S.E.2d at 692 syl. pt. 7. In *Board of Education of McDowell Co. v. Zando, Martin & Milstead*, 182 W.Va. 597, 390 S.E.2d 796, 803 (1990), this Court recognized that the practice of allowing offsets is "premised on the principle that a plaintiff is entitled to one, but only one, complete satisfaction for his injury." We explained further that "we have developed, independently of any assertion of contribution, a practice of allowing the defendant against whom a verdict is rendered to reduce the damages to reflect any partial settlement the plaintiff has obtained from a joint tortfeasor." *Id.* The facts of *Zando* presented joint tortfeasors, but as we explained in that case, setoffs are not necessarily limited to situations in which joint tortfeasors have caused injury or loss.

In *Zando*, a school board sued an architectural/engineering firm, Zando, Martin & Milstead (ZMM), for negligence and breach of contract. ZMM filed a third party complaint against two subcontractors. The school board eventually settled with both subcontractors for a total of $630,000. A jury awarded the school board $1,000,000 in compensatory damages, and ZMM sought to have the $630,000 settlements deducted from the verdict. The trial court refused and entered judgment against ZMM for the full $1,000,000. *Id.* at 801.

■ We reversed, noting that "[o]ur definition of the right of contribution ... makes no distinction among theories of recovery, *but focuses on the common liability of the defendants for plaintiff's injuries.*" *Id.* at 807 (emphasis added). We concluded that when the plaintiff's injuries arise from the combined actions of the defendants, the defendants are "jointly liable to the plaintiff and may seek inchoate contribution among themselves regardless of the theories of recovery asserted against

them individually." *Id.* At syllabus point 8 of *Zando*, we explained that:

Where there is a single indivisible loss arising from the actions of multiple parties who have contributed to the loss, the fact that different theories of liability have been asserted against them does not foreclose their right of contribution *inter se* or prevent them from obtaining a verdict credit for settlements made with the plaintiff by one or more of those jointly responsible.

Relying on *Zando*, in *Biro v. Fairmont General Hospital, Inc.*, 184 W.Va. 458, 400 S.E.2d 893 (1990), this Court reversed a lower court order which granted the hospital's motion to offset a jury verdict. In that case, the plaintiff sued the hospital, alleging malpractice in connection with numbness she experienced in her legs following a hysterectomy. The plaintiff contended the numbness was caused by the doctor negligently compressing her femoral nerve during the operation. While the plaintiff was recuperating in the hospital, she fell and injured her knee as she was being assisted to the bathroom by two nurses.

The plaintiff filed suit against Dr. Hamilton, who performed the hysterectomy, and Fairmont General Hospital. Dr. Hamilton settled with the plaintiff prior to trial for $30,000. The settlement was not disclosed to the jury. The jury subsequently found the hospital 60% negligent and the plaintiff 40% negligent, resulting in a combined award of $100,000 to the plaintiff and her husband. The hospital moved to offset the jury verdict by $30,000, the amount of the settlement reached with Dr. Hamilton, and the motion was granted.

On appeal, we determined that the issue was whether the plaintiff's action against the hospital for the injury to her right knee was independent from the femoral nerve damage caused during the hysterectomy, and thus not susceptible to an offset. We found that Dr. Hamilton and the hospital were not joint tortfeasors and that the plaintiff's knee injury and the alleged femoral nerve injury did not constitute a single, indivisible loss which resulted from the

actions of the hospital and Dr. Hamilton. Instead, we stated that "[i]t is clear that the malpractice claim is a separate cause-of-action, and thus divisible, from the negligence on the part of the hospital." *Id.* at 896. Because the incidents constituted two separate causes-of-action, we held that the lower court erred in offsetting the $30,000 settlement made by Dr. Hamilton in connection with the femoral nerve injury. *Id.* at 897.

■ In the case now before us, we find that the plaintiff, Lisa Pennington, did suffer a single indivisible loss as the result of the actions of multiple parties. Her loss—a fractured clavicle and the ensuing complications—resulted from the actions of two successive and independent tortfeasors, the driver, Kevin Keyes, and Dr. Chand. As the original tortfeasor, Keyes is considered to be "the proximate cause of the aggravated injuries occurring by reason of the negligence of the treating physician or hospital," and "liable for all damages, including the successive damages inflicted by the physician or hospital." *Thornton,* 158 W.Va. 504, 213 S.E.2d at 102 syl. pt. 2. All parties agree that the plaintiff was free to pursue a separate cause of action for malpractice against Dr. Chand after settling with and then releasing the original tortfeasor. However, now that she has obtained a verdict against the doctor, we find that a setoff, or verdict credit, is appropriate in this case because the successive and independent tortfeasors were "jointly responsible" for a single indivisible injury. "Where such joint obligation for damages is found, a credit is allowed for any settlement prior to verdict...." *Zando,* 182 W.Va. at 609, 390 S.E.2d at 807. Our conclusion is consistent with the common law principle recognized in *Thornton,* that "an injured party may have only one full recovery, and complete satisfaction *from any tort-feasor* is satisfaction of the total damages suffered." 158 W.Va. 504, 213 S.E.2d at 102 syl. pt. 1 (emphasis added).

For the foregoing reasons, we reverse the judgment of the Circuit Court of Mercer County which refused to grant the appellant's motion for a verdict credit, and remand for entry of an order consistent with this opinion.

Reversed and remanded.