STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

FILED
April 26, 2021

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Elizabeth Musick,**
**Petitioner, Plaintiff Below**

**vs.)  No. 19-0880** (Mercer County 17-C-429)

**Robert C. Pennington, M.D.,**
**Respondent,  Defendant Below**

# MEMORANDUM DECISION

Petitioner Elizabeth Musick, by counsel Mark R. Staun, appeals the August 7, 2019, and August 29, 2019, orders of the Circuit Court of Mercer County in which the court, respectively, found that petitioner suffered only one occurrence of medical negligence and dismissed petitioner's claim for medical malpractice against respondent. Respondent Robert C. Pennington, M.D., by counsel Robby J. Aliff, filed a response in support of the circuit court's orders. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 11, 2015, petitioner underwent a total left knee arthroplasty, also known as a total knee replacement, performed by respondent at Princeton Community Hospital ("PCH"). In October of 2015, petitioner presented at respondent's office with left knee pain and was diagnosed with an infection of the left knee. Over the course of the following two weeks, petitioner was seen multiple times by respondent for treatment of the infection. Ultimately, on November 4, 2015, respondent performed an "incision and drainage" procedure on petitioner's left knee to treat the infection.

On November 21, 2015, petitioner presented at Bluefield Regional Medical Center ("BRMC"), complaining of pain and swelling of her left knee, and was seen by Dr. Walid H. Azzo. On November 30, 2015, Dr, Azzo performed an "irrigation and debridement" procedure on petitioner's left knee and "aspiration of the left knee joint."

1

Petitioner's left knee infection persisted, and on January 6, 2016, Dr. Azzo performed surgery to remove petitioner's left knee prosthesis and insert an antibiotic spacer. A revision surgery, removing the antibiotic spacer and inserting a new left knee prosthesis, was performed by Dr. Azzo on March 7, 2016. Thereafter, petitioner continued to experience left knee pain and, in 2017, sought medical treatment at Virginia Commonwealth University ("VCU"), where she contends that she was, finally, appropriately diagnosed and properly treated.

On December 8, 2017, petitioner filed the underlying medical malpractice action against respondent and PCH, pursuant to the West Virginia Medical Professional Liability Act ("MPLA"). *See* West Virginia Code §§ 55-7B-1 through -12 (2015). On December 27, 2017, petitioner amended her complaint to include Dr. Azzo as a defendant. In her amended complaint, petitioner alleged that during the initial arthroplasty surgery performed by respondent, she contracted a bacterial infection in her left knee. She further alleged that respondent "fell below the applicable standard of care by failing to provide adequate procedures or a sufficiently sterile environment" for the initial surgery. Petitioner averred that, as a result of respondent's negligence, she suffered a distinct medical injury, which necessitated a subsequent revision arthroplasty surgery. As to Dr. Azzo, petitioner argued that Dr. Azzo breached the applicable standard of care by failing to "apprise himself of the [petitioner's laboratory] results that came back" positive for the presence of a bacterial infection. Petitioner suggested that, due to this failure, Dr. Azzo never "had [petitioner] on the appropriate antibiotic regimen" and caused her medical injury.

On July 29, 2019, at a pre-trial hearing, petitioner advised the circuit court that she had entered into confidential settlements with Dr. Azzo and PCH and that the total amount of the settlements exceeded the amount petitioner could possibly recover for a single occurrence of medical negligence. *See* West Virginia Code § 55-7B-8(a) (2015). Thereafter, both parties moved the court to issue a finding as to whether petitioner's claims constituted one or multiple occurrences of medical negligence. The circuit court ordered both parties to submit written briefs addressing this issue, and after considering the briefs and oral arguments presented, the court found "that the case *sub judice* involved only one occurrence" of medical negligence.

In its August 7, 2019, order, the circuit court cited this Court's ruling in *Pennington v. Bluefield Orthopedics*, 187 W. Va. 344, 419 S.E.2d 8 (1992). In *Pennington*, this Court found, in part, that

[w]here there is a single indivisible loss arising from the actions of multiple parties who have contributed to the loss, the fact that different theories of liability have been asserted against them does not foreclose their right of contribution *inter se* or prevent them from obtaining a verdict credit for settlements made with the plaintiff by one or more of those jointly responsible.

[a]s the law regards the negligence of the one who caused the original injury as the proximate cause of the aggravated injuries occurring by reason of the negligence of the treating physician or hospital, the original tort-feasor is liable for all damages, including the successive damages inflicted by the physician or hospital.

*Id.* at Syl. Pts. 4 and 5 (internal citations omitted).  The circuit court reasoned that, here, neither party disputed that "the initial, alleged injury was an infection contracted and/or introduced at the time of [petitioner's] total knee arthroplasty performed by [respondent]." The court found that the contraction of the infection represented a "single indivisible loss" and any and all alleged actions of other parties that may have contributed to that loss do not break the proximate causal link between the actions taken by respondent during the initial surgery.

On August 19, 2019, as the court determined there was only one occurrence of medical negligence, and as the settlements with Dr. Azzo and PCH exceeded the amount that petitioner could recover at trial against respondent, pursuant to West Virginia Code § 55-7B-8 (2015), the circuit court dismissed, with prejudice, petitioner's claims against respondent. It is from the circuit court's August 7, 2019, and August 19, 2019, orders that petitioner now appeals.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). Further, "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).  Guided by these standards, we now turn to petitioner's arguments on appeal.

On appeal, petitioner raises three assignments of error. Each of the assignments of error relate, in part, to the propriety of the circuit court's determination that petitioner suffered only one occurrence of medical negligence. In her first and second assignments of error, petitioner alleges that the circuit court erred in concluding that she suffered a single occurrence of medical negligence, as the court did not apply or interpret the provisions of the MPLA but applied "inapplicable common law principles." In her third assignment of error, petitioner argues that the circuit court invaded the province of the jury in finding that she suffered only one occurrence of medical negligence.

To address petitioner's first and second assignments of error, we must first discuss the then-applicable law. The parties do not dispute that West Virginia Code §§ 55-7B-1 through -12 (2015) is the version of the MPLA that applies to petitioner's instant claims. West Virginia Code § 55-7B-8(a) (2015), "Limit on liability for noneconomic loss," provides, in pertinent part, that

> [i]n any professional liability action brought against a health care provider pursuant to this article, the maximum amount recoverable as compensatory damages for noneconomic loss may not exceed $250,000 for each occurrence, regardless of the number of plaintiffs or the number of defendants[.]

"Occurrence" was not defined in the 2015 version of the MPLA.[1] In *Phillips v. Larry's Drive-In Pharmacy, Inc.*, 220 W. Va. 484, 491, 647 S.E.2d 920, 927 (2007), this Court acknowledged that its "examination of any portion of the MPLA is guided, at all times, by the recognition that the [MPLA] alters the 'common law and statutory rights of our citizens to compensation for injury and death'" and is, by its own terms, "an act designed to be in derogation of the common law." The *Phillips* Court noted that "where there is any doubt about the meaning or intent of a statute in derogation of the common law, the statute is to be interpreted in the manner that makes the least rather than the most change in the common law" and must "generally be given a narrow construction." *Id.* at 492, 647 S.E.2d at 928.

Taking that narrow view, we are not persuaded by petitioner's contention that the circuit court failed to interpret the meaning of "occurrence" within the "framework of the MPLA" or her argument that the circuit court erroneously relied on Syllabus Points 4 and 5 of *Pennington v. Bluefield Orthopedics*, a case that pre-dated the MPLA. Given our recognition in *Phillips* that the MPLA is an act in derogation of common law, we see no error in the circuit court's consideration of *Pennington* under the narrow facts and circumstances of this case.

Petitioner suggests that this Court look to the United States District Court for the Northern District of West Virginia's ruling in *Dawson v. United States*, No. 1:11-cv-114, 2013 WL 3187078 (N.D.W.Va. June 20, 2013), for a proper consideration of the definition of occurrence in the context of the 2015 version of the MPLA.[2]

However, even when considering petitioner's claims under the *Dawson* lens, we are not persuaded by petitioner's arguments and find that under the particular facts and unique circumstances of this case, the circuit court did not err in finding that there was but one occurrence of medical negligence. Here, the circuit court reasoned that, based upon the consideration of the facts before it, the injuries complained of by petitioner resulted from a "single indivisible loss[:]" the infection petitioner developed following her initial left knee arthroplasty in August of 2015.

---

[1] As amended in 2017, the MPLA now defines "occurrence" as

> any and all injuries to a patient arising from health care rendered by a health care facility or a health care provider and includes any continuing, additional or follow-up care provided to that patient for reasons relating to the original health care provided, regardless if the injuries arise during a single date or multiple dates of treatment, single or multiple patient encounters, or a single admission or a series of admissions.

West Virginia Code § 55-7B-2(l) (2017).

[2] In *Dawson*, the United States District Court for the Northern District of West Virginia adopted the definition of occurrence of medical negligence adopted by the Court of Appeals of Indiana in *Medical Assurance of Indiana v. McCarty*, 808 N.E.2d 737 (Ind.Ct.App.2004), which defined occurrence as "the negligent act itself plus the resulting injury, with a health care provider's liability limited to the lowest common denominator between act and injury." *Id.* at 745.

4

Each injury complained of by petitioner involved the same leg and the same infection. Accordingly, we find no issue with the circuit court's determination that there was one occurrence of medical negligence involving petitioner. Additionally, we note that as the court found that petitioner sustained a single occurrence of medical negligence, there was no error in the court's dismissal of the remainder of petitioner's claims.

In her third assignment of error, petitioner argues that in determining that there was one occurrence of medical negligence, the circuit court improperly invaded the province of the jury. However, it is undisputed that in the proceedings below petitioner and opposing counsel specifically requested that the circuit court make a determination as to the number of occurrences of medical negligence. As noted by the circuit court in its August 7, 2019, order, "both parties moved for the [c]ourt to issue a finding as to whether this case involve[d] one or two [separate] occurrences" of medical negligence. Accordingly, under the limited facts and unique circumstances of this case, we find that any error in the circuit court's "invasion" of the province of the jury in determining the number of occurrences of medical negligence in petitioner's underlying case constitutes invited error. Syl. Pt. 2, *Hopkins v. DC Chapman Ventures, Inc.*, 228 W. Va. 213, 719 S.E.2d 381 (2011) ("A litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal.")  As such, petitioner is entitled to no relief as to this issue on appeal.

For the foregoing reasons, we find no error in the decisions of the circuit court and its August 7, 2019, and August 29, 2019, orders are hereby affirmed.

Affirmed.


**ISSUED:**  April 26, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead

**NOT PARTICIPATING:**

Justice William R. Wooton


**DISSENTING:**

Hutchison, Justice, dissenting:

I dissent to the majority's resolution of this case.  I would have set this case for oral argument to thoroughly address the error alleged in this appeal.  Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted—not a memorandum decision.  Accordingly, I respectfully dissent.